SUPREME COURT. New York General Term, December, 1853
*Edmonds, Edwards* and *Mitchell,* Justices.

JOSEPH MORRIS *vs* THE PEOPLE. HESS WHEELER *vs.* THE
SAME.

The first section of the act passed 12 April 1853, (Sess. Laws of 1853 page
353,) prescribing and authorizing a general form for a record of conviction in
case of vagrancy is not unconstitutional.
Whether the second section of that act which authorizes a discharge before the
expiration of the term, or an order jointly made by the committing magis-
trate and one of the governors on the almshouse, is not unconstitutional and
void as infringing upon the pardoning power vested in the governor by the
constitution, act 4 sec 5. Quere?

These cases came before the court on writs of certiorari
issued for the purpose of reviewing the decisions of one of the
justices of this court at chambers. The legal questions pre-
sented sufficiently appear in the opinion of the court.

*N. E. Blunt,* (Dist. Att'y,) for the People.

*A. D. Russell,* for plaintiff.

*By the Court,* EDMONDS, P. J. These cases are brought be-
fore us on certiorari to review the action of a justice at cham-
bers on writs of habeas corpus. From the returns to those
writs it appeared that the prisoners had been committed to the
penitentiary in the city of New York on a summary conviction,
as vagrants, and that the only record of the convictions was in
the following form:

*City and County of New York, ss:* The undersigned, one of
the police justices in the city of New York, hereby certifies that
Joseph Morris was this day before him on a charge of being a
vagrant; that he, the justice, made diligent examination of the
matter, and upon due proof found him, the said Joseph Morris,
to be a vagrant within the meaning of the law in such case
provided; and he, the said justice did so adjudge. Whereupon,
he, the justice aforesaid, did, by warrant under his hand and

seal, commit the said Joseph Morris, so adjudged to be a vagrant as above stated, to the penitentiary in said city, for the term of six months. In witness whereof, I, the undersigned, police justice aforesaid, have hereunto fixed my hand and seal, this 26th day of April, in the year 1853.

S. H. STUART, Police Justice.

This form of the record was defended under an act which passed the legislature on the 12th of April, 1853, and was in strict conformity with that statute. That act was probably as extraordinary as any to which party and inconsiderate legislation ever gave birth, and was a greater invasion of the rights of personal liberty than is to be found in our statute book; but yet, unless we can hold it to be in violation of the constitution, we are obliged to permit it to be enforced, however strongly we may feel called upon to condemn its provisions. Summary convictions are coming very much into vogue with us. In Great Britain, from whose system of jurisprudence we have borrowed them, they have extended to about 100,000 in a year, under their game, excise and police laws. But as they operate principally upon the poorer and lower classes, they are permitted to endure, and to become a principal instrument in keeping those classes in subjection. The enlightened judges of that country, who have for ages been distinguished for their firm defence of the liberty of the subject, easily discovered how prolific those convictions might be of oppression of the lower classes, and therefore they have, for a long time, adhered to a system of rules in regard to them which were calculated to, and did, afford protection against this manifest danger. That system required that a record of the conviction should be made out which should specify every act and fact on which the conviction was based, so that, by removing it to a higher court, the party accused might have the opportunity, which in a country of laws, ought to belong to every one, of testing the question before some tribunal, other than the oppressor himself, whether he was lawfully convicted or not. This required necessarily, in the convicting magistrate considerable labor, skill and

Morris v. The People.

knowledge in the business in which he was engaged, and was, to be sure, sometimes pretty onerous upon the magistrate. Still the courts adhered for the sake of personal liberty, with great strictness, to their rules. But as the British parliament, yielding to the same impulse which has influenced our legislature, increased the range and number of these convictions, they deemed it advisable to lighten the burden on the magistrate, and they, therefore, in some cases, adopted a general form of a record, as our act of 1853 has done. But aware that by such a form they deprive the party accused of his former remedy of review, they never authorized it without providing another mode of review, so that the accused, thus deprived of his remedy by certiorari out of the king's bench, might still have it by an appeal to the Quarter Sessions; and thus, while they relieved the magistrate from the labor and the necessity for knowledge formerly demanded, they did not achieve that wo.k at the expense of the liberty of the subject, or make the magistrate the final judge of the correctness of his own action where personal freedom was involved. In this state there was no general form of a record authorized until this recent act, and there was no mode by which the accused could have his conviction reviewed but in this court, to which the record could be removed and the action of the committing magistrate be scrutinized. During the time that I have been on the bench, I have had occasion to discharge hundreds of persons from the penitentiary, because of erroneous records of convictions. So numerous were those applications becoming that I took pains in a carefully considered opinion to collate all the law on the subject, and spread it out so plainly that the police magistrates could not mistake it. This was done in the case of *The People* v. *Eliza Phillips.* (*a*) The views then put forth have lately been recognized in the Court of Appeals, in *Morewood* v. *Hollister.* (*b*) This did not reach the evil, for the magistrates disregarded the rule, sometimes finding it too much trouble and sometimes erring on purpose to give room for the operation of a habeas corpus. I accordingly, in January, 1849, deemed it

(*a*) Reported at page 95.   (*b*) 2 Selden R. 309.

my duty to call the attention of the grand jury to the subject, and they made a presentment, from which it appeared that of 511 records of conviction only three were valid, and that of 746 vagrants in the penitentiary 743 were unlawfully imprisoned, and were entitled to be forthwith discharged. This was a state of things sufficiently alarming to awaken attention. Accordingly, at the request of the board of supervisors, proper forms were provided for the use of the magistrates, and they were for a while adhered to. They were, however still troublesome, for they still demanded labor, knowledge and skill, until the statute in question interposed, rendering them all unnecessary. Now, under that statute, there is no mode in which the decision of a magistrate, in a case of alleged vagrancy, can be reviewed. The only remedy provided is, that its second section confers on the committing magistrate and one of the governors of the almshouse the power to discharge the convict before the expiration of his term, but no where provides for a review of the action of the magistrate in the conviction itself.

It may well be questioned whether this second section of the statute is not void, because of this transfer of the pardoning power from the governor of the state to one of the governors of the almshouse, but that question is not now before us. The only question here is whether the first section of the statute, depriving, as it may, the accused party of all review of a judgment by which any one of us may, without a trial by jury, be imprisoned for six months, is in violation of the constitution.

The only provisions of that instrument at all bearing on the subject is section 2 of article 1, which enacts that " the trial by jury in all cases in which it has been heretofore used shall remain inviolate forever." But that does not affect the question before us, because that relates to the conviction, and this statute only to the review of it; because a jury trial never has been used in cases of summary convictions. The statute, therefore, stands unaffected by the constitution, but it is none the less to be deprecated, for it already acts upon more than 2,000 of our people every year, and the number is constantly increasing, and it may be made to act upon every one of us, male or female,

young or old, rich or poor, high or low.    The remedy, however, is not in this court, but in the legislature.    Our duty is discharged when we hold, as we must, that the law is not uncon. stitutional, and affirm the judgment below.

Judgment affirmed.